# IN THE COURT OF APPEALS OF IOWA

No. 13-0991
Filed August 27, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**AHKINEA DEON COX,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Douglas S. Russell, Judge.

A defendant appeals his sentence following a guilty plea to charges of robbery in the first and second degrees.  **AFFIRMED.**

Lars G. Anderson of Holland & Anderson, L.L.P., Iowa City, until withdrawal effective July 30, 2014 (post briefing), and then Alison Werner Smith of Hayek, Brown, Moreland & Smith LLP, Iowa City, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, Janet M. Lyness, County Attorney, and Anne M. Lahey, Assistant County Attorney, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**VAITHESWARAN, P.J.**

Ahkinea Cox was charged with several crimes arising out of robberies at two stores and a gas station in Johnson County. He was twenty-nine years old at the time the crimes were committed. Cox pled guilty to one count of first-degree robbery and two counts of second-degree robbery. Each of the counts carried mandatory minimum prison terms of seventy percent. *See* Iowa Code § 902.12(5) (2007).

Prior to sentencing, Cox raised a constitutional challenge to the mandatory minimum sentences. In relevant part, he asserted "the .70 requirement, applied to the facts and circumstances of his case, violates state and federal guaranties preventing cruel and unusual punishment." He specifically argued "the requirement that he serve .70 of a 25 year sentence [for first-degree robbery] is disproportionate to the circumstances of the offense and the offender." He cited his "limited ability to think" and "other mitigating factors." At a hearing, he asserted "the mandatory minimum sentence, the 70 percent rule, prevents the Court from taking into account the circumstances of the offender."

The district court denied the challenge. The court sentenced Cox to prison terms not exceeding twenty-five years on the first-degree robbery count and ten years on the second-degree robbery counts, with the sentences to be served concurrently. The court stated, "In all case files and pursuant to Section 902.12(5), the Defendant shall be denied parole or work release unless the Defendant has served at least seven-tenths of the maximum term of Defendant's sentences." Because the court ordered the terms served concurrently, Cox would have been required to serve a minimum of seventeen-and-a-half years.

On appeal, Cox contends (I) recent Iowa Supreme Court opinions finding mandatory minimum sentences for juveniles unconstitutional "mandate that the mentally retarded sentenced to lengthy mandatory prison sentences receive an individualized sentencing hearing" and (II) his "mandatory lengthy prison sentence is grossly disproportionate under the Iowa Constitution."

*I.* As a preliminary matter, the State asserts that Cox failed to preserve error on his first contention. We disagree. *See State v. Bruegger*, 773 N.W.2d 862, 871 (Iowa 2009) (concluding challenge to illegal sentence could be raised at any time and "challenge to an illegal sentence includes claims that the court lacked the power to impose the sentence or that the sentence itself is somehow inherently legally flawed, including claims that the sentence is outside the statutory bounds or that the sentence itself is unconstitutional"); *see also State v. Lyle*, ___ N.W.2d ___, 2014 WL 3537026, at *2-3 (Iowa 2014) (concluding challenge to sentence as disproportionate under state constitution's cruel and unusual punishment clause was "fundamentally similar" to categorical challenge under same clause, allowing court to consider merits). We proceed to the merits of Cox's first argument, which he encapsulates as follows: persons with intellectual disabilities "are categorically constitutionally entitled to individualized sentencing hearings."

In deciding this issue, we need go no further than *Lyle*, a recent Iowa Supreme Court opinion that struck down mandatory minimum sentences for juveniles under the Iowa Constitution's cruel and unusual punishment clause. *Lyle*, 2014 WL 3537026, at *20 ("[W]e conclude all mandatory minimum sentences of imprisonment for youthful offenders are unconstitutional under the

cruel and unusual punishment clause in article I, section 17 of our constitution"). After announcing this holding, the court took pains to limit the holding to juveniles, stating, "[o]ur holding today has no application to sentencing laws affecting adult offenders . . . . This case does not move any of the lines that currently exist in the sentencing of adult offenders." *Id.* at \*22. Because Cox was an adult at the time he committed the crimes, his categorical challenge to the seventy-percent rule is not contemplated by *Lyle*.

**II.** Cox next asserts his "punishment is disproportionate to his offenses." He points to the fact that no one was injured during the robberies, he was with an accomplice in all three robberies, verbal threats were made in only one of the robberies, he was heavily intoxicated in at least one of the robberies, and the dangerous weapon he used in the first-degree robbery was a knife, not a gun. Cox further asserts he has a moderate IQ and serious mental illnesses, has endured challenges and limitations his entire life, and was "more likely than other offenders to suffer in prison."

The Iowa Supreme Court set forth the framework for such a challenge in *State v. Oliver*, 812 N.W.2d 636 (Iowa 2012). The "threshold inquiry" is whether the sentence—in this case the mandatory minimum sentence of seventeen-and-a-half years—leads to an "inference of gross disproportionality to" the crime. *Oliver*, 812 N.W.2d at 650. "If the sentence does not create an inference of gross disproportionality, then 'no further analysis is necessary.'" *Id.* In making this determination, we consider several general principles: (1) "we owe substantial deference to the penalties the legislature has established for various crimes," (2) "it is rare that a sentence will be so grossly disproportionate to the

crime as to satisfy the threshold inquiry and warrant further review," (3) "a recidivist offender is more culpable and thus more deserving of a longer sentence than a first-time offender," and (4) the unique features of a case can "converge to generate a high risk of potential gross disproportionality." *Id.* at 650-51.

On the first point, the legislature could not have been clearer in requiring a mandatory minimum sentence for first and second-degree robbery. *See* Iowa Code § 902.12(5) (stating a person serving a sentence for "[r]obbery in the first or second degree" "shall be denied parole or work release unless the person has served at east seven-tenths of the maximum term of the person's sentence").

On the second point, robbery requires intent to commit a theft *and* an assault, a threat or purposeful placement of another in fear of immediate serious injury, or a threat to commit a forcible felony. Iowa Code § 711.1. The mandatory minimum sentence of seventeen-and-a-half years was applied to one of the crimes in which Cox admitted he carried a knife with a blade over five inches long and he "reckon[ed]" that a person in the store clerk's position would feel threatened by the knife. This was not the "rare" circumstance where the mandatory minimum sentence was so grossly proportionate to the crime to warrant further review. *Oliver*, 812 N.W.2d at 650*.*

As for the third point—recidivist conduct—Cox's presentence investigation report lists a litany of prior crimes dating back to 1998. Included among them was a conviction for armed robbery that carried a six-year prison term and a conviction for assault causing injury shortly before he committed the first of the three robberies.

We turn to the final point—the unique features of the case. There is no question Cox had a traumatic upbringing. His father was a drug user and absent from his life, his mother was addicted to drugs, developed cancer, and died, and he was raised by his grandmother who physically abused him. He had significant difficulties in school, quit after the ninth grade, and got in with the wrong crowd at a young age. He was diagnosed with mental illnesses, including schizophrenia, and was initially deemed incompetent to stand trial, although his competency was later restored based in part on a finding that he may have been "dissembling" when he spoke to psychiatrists before his first competency hearing.

Without minimizing Cox's tragic past, his personal circumstances do not mirror the "unusual combination of features" pointing to gross disproportionality. *Bruegger*, 773 N.W.2d at 884. Bruegger, who was convicted of "statutory rape," was twenty-one years old when he committed the crime and was subject to a "geometric" increase in the time he would serve based on the use of a juvenile adjudication to enhance his sentence. *Id.* at 866, 885. Cox was a twenty-nine-year old man who committed three classic robberies within three months.

We recognize the features set forth in *Bruegger* are not exhaustive. *See Oliver*, 812 N.W.2d at 651 (noting challenge could be brought "regardless of the presence or absence of these factors"). But reading *Bruegger* and *Oliver* together, we believe an adult's troubled childhood is not sufficient to meet the gross disproportionality threshold test.

We conclude Cox's mandatory minimum sentence did not meet the threshold test for a finding of gross disproportionality under the cruel and unusual

punishment clause of the Iowa Constitution.  Accordingly, we affirm the sentence imposed by the district court.

**AFFIRMED.**